# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

UNITED STATES, ex rel. SAMUEL
ADAM COX III,

    Plaintiff-Relator,

v.                              No. 2:08-cv-02832-BBD-tmp

SMITH & NEPHEW, INC.,

    Defendant.

**DEFENDANT'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF-RELATOR'S AMENDED COMPLAINT**

---

Relator's Opposition to Smith & Nephew, Inc.'s ("S&N" or the "Company") Motion to Dismiss – nearly one-third of which Relator devotes to an erroneous but for present purposes irrelevant recitation of the regulatory scheme concerning the Trade Agreements Act ("TAA") – does nothing to salvage his Amended Complaint from dismissal for want of jurisdiction and failure to state a claim.[1]  Specifically, regarding S&N's jurisdictional argument under the False Claims Act's ("FCA") public disclosure bar, Relator concedes all but one of the elements necessary to dismiss his *qui tam* claims on jurisdictional grounds.  As to the one element he does not concede – whether S&N's prior, voluntary disclosure to government investigatory bodies of

---

[1] One of Relator's inaccurate assertions does warrant a specific response here.  Although the Company has addressed with the government the country-of-origin issues it identified in its voluntary disclosure, the Company has in no way admitted any violations of the False Claims Act.  *See* Open. Br. at 4-5.

1

the issues on which Relator's action is based qualifies as "public disclosure" under the FCA – Relator simply ignores the compelling case law and policy arguments S&N laid out in its opening brief. Instead, he relies extensively on a single Sixth Circuit case that does nothing but restate a non-controversial canon of statutory construction that does not alter the required analysis demonstrating his *qui tam* claims are barred.

Regarding S&N's Rule 9(b) arguments, Relator concedes he has not identified a single false claim. Instead, he first argues for a special "relaxation" of Rule 9(b)'s particularity requirement in FCA cases despite the fact that the Sixth Circuit explicitly requires relators to allege specific false claims with particularity, has never established a lower standard in FCA cases and, indeed, has explicitly declined to do so in recent cases. Relator also tries to breathe life into at least some portion of his *qui tam* claims by contending that the Fraud Enforcement and Recovery Act of 2009 ("FERA") legislatively overruled binding Sixth Circuit authority requiring relators to identify specific false claims or, at the very least, removed the false claim requirement in causes of action, like Relator's Count II, asserted under subsection 3729(a)(1)(B) (formerly 3729(a)(2)) of the FCA. In making these arguments, however, Relator mischaracterizes FERA's legislative history. Additionally, he ignores the plain language and real legislative history of subsection 3729(a)(1)(B), as well as recent and compelling case law, making clear that even under that subsection a relator still must identify an allegedly false claim.

Finally, Relator makes no serious effort to respond to S&N's demonstration that his FCA retaliation claim must be dismissed because Relator has nowhere properly alleged that S&N was aware that he was engaged in protected activity. Instead, Relator wrongly contends his allegations are at least as sufficient as those the Sixth Circuit recently found adequate in another

2

case.  However, Relator's allegations here provide no basis for concluding that he was engaged in any protected activity, much less that S&N was aware he was engaged in any such activity.

## I. This Court Lacks Subject Matter Jurisdiction Because Relator's Complaint Was Based Upon a Public Disclosure

In its opening brief, S&N demonstrated that the Court lacks jurisdiction over Relator's *qui tam* claims (Counts I-III) because his allegations are "based upon" publicly disclosed information, and because he is not an original source.  Open. Br. at 5-12.  Relator does not challenge the majority of S&N's points.  He concedes both that he is not an original source, and that his action is "based upon" the issues S&N voluntarily disclosed to both the Department of Defense Inspector General and the Veterans Affairs National Acquisition Center months before Relator filed his original complaint.  His only argument is that those disclosures somehow do not qualify as "public disclosures" under the FCA.

Relator bases this argument on a Sixth Circuit case, *United States v. A.D. Roe Co.*, 186 F.3d 717 (6th Cir. 1999), which stands for nothing more than the unremarkable principle that the FCA's jurisdictional bar applies only when the information upon which a relator's claim is based has been publicly disclosed via one of the various sources or fora listed the statute.  *Id.* at 725.  On that point there is no disagreement:  obviously, the language of a statute must be followed.  Where Relator goes far astray is in his inexplicable insistence that the exclusive nature of the sources of public disclosures listed in the statute renders the terms used to describe the sources beyond judicial interpretation and definition.  This, of course, is nonsensical.  Indeed, *A.D. Roe* itself, while declaring the sources listed in the statute to be exhaustive, recognized that they may be interpreted to cover disclosures not specifically spelled out – in that case whether information received pursuant to a FOIA request would qualify as an "administrative report" as stated in the statute.  *Id*.  Had the *A.D. Roe* court harbored Relator's overly strict and implausible reading of

3

the statute and his view of the role of courts, there would have been nothing preventing it from establishing a rule that FOIA disclosures are not "public" because they are not specifically spelled out in the statute. It did not, and it remanded the case for a determination as to whether the FOIA responses in issue qualified as public disclosures. *Id.* at 726.

More significantly, the Supreme Court's recent decision in *Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 130 S. Ct. 1396 ( 2010), is a final, fatal blow to Relator's strained argument. There, the Court engaged in exactly the type of statutory construction Relator contends is impermissible, when it interpreted the reference in the FCA's public-disclosure-bar provision to "administrative" reports, audits and investigations to include state and local as well as federal sources.[2]

In the present case, consistent with the compelling authority S&N discussed in its opening brief, the Company's voluntary disclosure to government investigatory bodies initiated and is part and parcel of an investigation that falls squarely within the parameters of the sources specified in the FCA's jurisdictional bar. *See* Open. Br. at 7-8. This interpretation of the statute is not only supported by the cases S&N cited, it is also consistent with the central objective of the FCA. As the government recently stated, the FCA's purpose is "alerting the government to potential fraud" and "[a] relator who gives his information to the government after a public disclosure has already occurred does little or nothing to further that central objective." *See* Brief

---

[2] The additional cases on which Relator relies serve him no better. In *Jones*, despite the fact that the FCA mentions only "hearings" and not claims, cases, or causes of action, the Court relied on Sixth Circuit precedent and found that a filed complaint constitutes a public disclosure under the FCA. *U.S. ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326, 331 (6th Cir. 1998). Such an exercise of statutory definition is precisely what should be undertaken in this case. Both *Williams* and *LeBlanc* involved cases brought by government employees based on information they investigated and distributed, and are thus factually inapposite. *See U.S. ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1499 (11th Cir. 1991); *U.S. ex rel. LeBlanc v. Raytheon Co.*, 913 F.2d 17, 20 (1st Cir. 1990). Finally, the court in *Dunleavy* held only that disclosures in a state report are not "public" because Congress intended the jurisdictional bar to apply only to federal sources. *U.S. ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 745 (3rd Cir. 1997). As a result of the Supreme Court's recent decision in *Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson* (discussed *supra*), as well as recent FCA amendments (*see* Open. Br. at 5 n.2), this case no longer has precedential value on this point. More important, it has no relevance to the present case in any event.

for The United States as Amicus Curiae Supporting Respondents, *Ortho Biotech Prods. v. United States ex rel. Duxbury*, 2010 WL 2471083 (2010) (No. 09-654), *available at* http://www.justice.gov/osg/briefs/2009/2pet/6invit/2009-0654.pet.ami.inv.pdf (last visited June 24, 2010); *see also U.S. ex rel. Dingle v. Bioport Corp.*, 388 F.3d 209, 214-15 (6th Cir. 2004) (stating that "the purpose of the *qui tam* action is to prosecute fraud of which the government is unaware").  Those purposes were served by S&N's prior, voluntary disclosure and the concomitant government investigation.  *See* Open. Br. at 5 (citing Ex. C. to Reid Decl.).  Relator adds nothing to further this purpose, and his complaint is purely superfluous.

This is precisely the rationale at the root of the Seventh Circuit's well-reasoned opinions in *Mathews* and *Fowler*, decisions Relator does not even attempt to distinguish.  In reaching its holding that "[d]isclosure of information to a competent public official about an alleged false claim" is a "public disclosure within the meaning of § 3730(e)(4)(A) when the disclosure is made to one who has managerial responsibility for the very claims being made," the Seventh Circuit observed that "[t]he point of public disclosure of a false claim against the government is to bring it to the attention of the authorities."  *U.S. ex rel. Mathews v. Bank of Farmington*, 166 F.3d 853, 861 (7th Cir. 1999); *see also U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 736 (7th Cir. 2007), *cert. denied*, 552 U.S. 1183 (2008).[3]  Here, S&N, like the defendants in *Fowler* and *Mathews*, made disclosures to specific government officials with authority to act in the matter on behalf of the public.  Open. Br. at 7.  At the point those disclosures were made, Relator's complaint became wholly unnecessary to alert the government to anything.

---

[3] The Seventh Circuit recently revisited an aspect of its *Mathews* and *Fowler* decisions not in issue here, holding (as does the Sixth Circuit) that a *qui tam* claim is "based upon" a prior disclosure when its allegations are substantially similar to the publicly disclosed allegations.  *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir. 2009).  The Seventh Circuit had previously required the suit to be "derived from" the earlier public disclosure.  Notably, the Seventh Circuit did not alter its holdings in *Mathews* and *Fowler* that a defendant's disclosure of information to government officials with authority to act in the relevant matter constitutes a public disclosure under the FCA.

5

Relator's only attempt to counter this clear policy rationale is to assert that if he is denied jurisdiction to pursue his claim, S&N would be exculpated "from all liability for [its] fraudulent conduct." Opp. at 16. This suggestion is flawed on all levels. Most important here, by voluntarily disclosing country-of-origin issues to both the Department of Defense Inspector General and the Veterans Affairs National Acquisition Center, S&N affirmatively subjected itself to the scrutiny of, and possibility of an assertion of claims by, the very government authorities as to which Relator asserts S&N exculpated itself.

## II. Relator's *Qui Tam* Allegations in Counts I-III of His Amended Complaint Must Be Dismissed For Failure To Plead Fraud With Particularity

In *U.S. ex rel. Bledsoe v. Community Health Sys., Inc.*, 501 F.3d 493 (6th Cir. 2007) ("*Bledsoe II*"), the Sixth Circuit stated that "pleading an actual false claim with particularity is an ***indispensable element*** of a complaint that alleges a FCA violation in compliance with Rule 9(b)." *Id*. at 504 (emphasis added); *see also U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 446 (6th Cir. 2008) (Rule 9(b) applies to actions under then-current subsections 3729(a)(1), (a)(2) and (a)(3) of FCA). While a relator alleging a complex scheme need not attach to her complaint actual copies of allegedly false invoices, she must, at a minimum, "provide[] ***examples of specific false claims submitted to the government***." *Bledsoe II*, 501 F.3d. at 510 (emphasis added).

Faced with this "clear and unequivocal requirement," *id*. at 504, Relator concedes he has not alleged any specific false claims. Opp. at 18-28. Instead, he lays out a scattershot array of contentions having no merit, ranging from misguided and unsupported arguments that the Sixth Circuit would relax Rule 9(b) to allow his allegations to proceed, to erroneous assertions that *Bledsoe II* has been legislatively overruled and that the existence of a purportedly false claim is

6

no longer an element of a cause of action under 31 U.S.C. § 3729(a)(1)(B) (formerly, subsection 3729(a)(2)).

   A. **The Sixth Circuit Has Not Established an Exception to *Bledsoe II*'s "Clear and Unequivocal Requirement" That FCA Complaints Specify False Claims**

Relator first asserts that the Sixth Circuit "relaxes" Rule 9(b) such that allegations specifying actual false claims are not necessary and it is sufficient for a relator to allege that false claims probably were submitted. As S&N demonstrated in its opening brief, this is directly contrary to Sixth Circuit law. *Marlar*, 525 F.3d at 446 (a relator cannot satisfy Rule 9(b) by alleging that claims "must have been submitted, were likely submitted or should have been submitted"). Not surprisingly, then, the only Sixth Circuit case Relator cites in support of his contention that Rule 9(b) may be relaxed, *Michaels Bldg. Co. v. Ameritrust Co.,* 848 F.2d 674 (6th Cir. 1988), is not an FCA case and is completely inapposite. In fact, the Sixth Circuit in *Bledsoe II* specifically rejected *Michaels* as a basis for establishing the very same relaxation of Rule 9(b) in FCA cases that Relator urges here:

> Relator ascribes to *Michaels* more weight than the case can bear. *Michaels* did not obviate the need for a plaintiff to specifically allege the essential elements of the fraud that constitute a violation of the statute forming the basis of the plaintiff's cause of action. . . . *Michaels* is thus distinguishable from cases arising in the FCA context, where a false claim is a requirement of the cause of action.

*Bledsoe II,* 501 F.3d at 505-06; *see also U.S. ex rel. Laucirica v. Stryker Corp.*, No. 1:09-CV-63, 2010 WL 1798321, at *7 n.3 (W.D. Mich. May 3, 2010) (*Michaels* and other non-FCA cases inapplicable to Rule 9(b) analysis in FCA cases).[4]

---

[4] Relator's reliance on *Rotella* is equally misplaced. *Rotella* was not an FCA case, but a RICO case in which the Court engaged in a complicated balancing of policies unique to RICO claims. *Rotella v. Wood*, 528 U.S. 549, 550-61 (2000). The Court did not rule on what circumstances would support a relaxation of Rule 9(b). In addition, the one case it cited as an example of a lower court relaxing Rule 9(b) in a RICO case involved a plaintiff who, the Court explained, did not have access to the necessary facts. *See id*. at 560. Even if that case were somehow relevant to the present FCA case, it is distinguishable because Relator here has nowhere asserted – nor could he assert – that he lacked access to claims information.

7

In very recent cases, the Sixth Circuit has expressly declined on the facts presented to establish an exception to the "clear and unequivocal requirement" that an FCA complaint must specify at least representative examples of actual false claims. *See Marlar*, 525 F.3d at 446 ("[T]his case does not call upon us to establish such an exception."); *Bledsoe II*, 501 F.3d at 504 n.12 ("[W]e express no opinion as to the contours or existence of any such exception to the general rule that an allegation of an actual false claim is a necessary element of a FCA violation."). In these cases, the relators, like Relator in the present case, claimed to have become aware of purportedly fraudulent schemes through their day-to-day employment by the defendants. Although the relators in these other cases provided details about the alleged schemes and/or purported false or fraudulent records, they failed to identify any actual false claims allegedly submitted by the defendants. *Marlar*, 525 F.3d at 442-43, 445-48; *Bledsoe II*, 501 F.3d at 511-15. With the exception of one scheme alleged in *Bledsoe II* as to which the relator **had** identified at least the content and date of a representative false claim, 501 F.3d at 514-15, the Sixth Circuit affirmed dismissals of the claims under Rule 9(b).

While ignoring *Marlar* and other Sixth Circuit cases S&N cited in its opening brief when discussing Rule 9(b), Relator tries but fails to distinguish *Bledsoe*. Specifically, he improperly dismisses the details of the purportedly fraudulent schemes the *Bledsoe II* complaint contained, and he curiously cites in this regard the opinion in *Bledsoe I* (342 F.3d 634 (6th Cir. 2003)), which did not address the operative complaint. Opp. at 21-22. In addition, Relator states that *Bledsoe II* indicates it would be "ungainly, if not impossible" for a relator alleging a complex and far-reaching scheme to identify false claims, *id*., but he neglects to point out that *Bledsoe II* made it absolutely clear that, even where such a scheme is alleged, a relator still must "provide[] examples of specific false claims." 501 F.3d at 510.

Although *Bledsoe II* declined to establish a relaxation of Rule 9(b), it did note "the ***possibility*** of a court relaxing [the requirement to plead a false claim with particularity] in circumstances where a relator demonstrates that he cannot allege the specifics of actual false claims that in all likelihood exist and the reason that the relator cannot produce such allegations is not attributable to the conduct of the relator." *Id.* at 504 n.12 (emphasis added).  This note, however, provides no refuge to Relator in this case since he has not alleged – and could not legitimately allege – that he was precluded in any way from identifying actual claims.

Moreover, the case that *Bledsoe II* cites in discussing the "possibility" of relaxing Rule 9(b), an Eleventh Circuit opinion in *Hill v. Morehouse Med. Assocs.*, No. 02-14429, 2003 WL 22019936 (11th Cir. Aug. 15, 3003), is totally distinguishable.  Unlike Relator in the present case, the relator in *Hill* was a lower-level employee working in defendant's billing department and alleged that she had actually seen, and thus had first-hand knowledge of, claim forms prepared by the defendant which she alleged in great detail were false.  *See id.* at *5.  Relator in the present case does not, and cannot, make any such allegation.

## B. The Opinions From Other Circuits On Which Relator Relies Do Not Support A "Relaxed Approach" To Rule 9(b) In This Case

With no Sixth Circuit support for his contention that Rule 9(b) should be relaxed in this case, Relator cites three opinions from the First, Fifth and Seventh Circuits and contends there is a "growing sentiment that a more relaxed approach needs to be taken" regarding the application of Rule 9(b) in *qui tam* cases.  Opp. at 24-27.  There are, however, a number of other Circuits in addition to the Sixth that have held to the contrary.  *See U.S. ex rel. Sikkenga v. Regence BlueCross BlueShield*, 472 F.3d 702, 727-28 (10th Cir. 2006); *U.S. ex rel. Atkins v. McInteer*,

9

470 F.3d 1350, 1357-60 (11th Cir. 2006); *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 560 (8th Cir.), *cert. denied*, 549 U.S. 881 (2006).[5]

In any event, the opinions from other Circuits on which Relator relies are readily distinguishable on their facts and thus would not be applicable to the present case, even if controlling. In *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009), the court concluded that all relator was missing was the actual paperwork comprising the claims he alleged were false. His complaint met Rule 9(b) by specifying exactly which purportedly defective parts were shipped to the government on which dates, along with the details of payment. That relator could not produce actual invoices at the outset of his case was not fatal, the court concluded. *Id*. at 853-54.

In *U.S. ex rel. Grubbs v. Kannerganti*, 565 F.3d 180 (5th Cir. 2009), the relator claimed a number of doctors and a hospital billed Medicare and Medicaid for services not rendered. After describing the overall alleged scheme, however, the relator also alleged "at least one overt act of false billing for each doctor" – examples complete with the precise dates of billing and medical codes improperly claimed. *Id.* at 184-85.

In *U.S. ex rel. Duxbury v. Ortho Biotech Prods.*, 579 F.3d 13 (1st Cir. 2009), *cert. denied*, 2010 WL 2471083 (2010), the relators alleged that their employer, a pharmaceutical company, had caused third-party medical providers to submit false claims to Medicare. For each provider, relators alleged the dates and amounts of the allegedly false claims. In concluding that,

---

[5] The Supreme Court just this week denied certiorari in two cases addressing the necessity of pleading specific claims in an FCA action. In one of the cases that the Supreme Court declined to review, the Eleventh Circuit had held, as the Sixth Circuit does, that specific claims must be identified to satisfy Rule 9(b). *See U.S. ex rel. Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318 (11th Cir. 2009), *cert. denied*, 2010 WL 784804 (2010). In the other, the First Circuit had ruled that the relators satisfied Rule 9(b) without identifying specific false claims with particularity because they alleged that third parties, rather than the *qui tam* defendants for which relators had worked, had submitted the false claims in issue. *See U.S. ex rel. Duxbury v. Ortho Biotech Prods.*, 579 F.3d 13 (1st Cir. 2009), *cert. denied*, 2010 WL 2471083 ( 2010).

"[a]lthough a close call," *id.* at 30, the relators had satisfied Rule 9(b), the First Circuit stated that a special "relaxing" of Rule 9(b) may be warranted where a relator alleges that a third-party, rather than the defendant, submitted false claims. *Id.* at 29. The *Duxbury* court also emphasized the date- and content- specificity with which the relator had alleged actual false claims. *Id.* at 30.

By contrast, in the present case Relator has not even attempted to plead any specifics concerning even one representative claim. He also has not alleged that some third party submitted the claims in issue. Nor has he alleged – nor could he – that he lacked access to claims information. All he is able to allege on first-hand knowledge is that S&N offered certain products for sale to the government on its website and, therefore, "in all likelihood" sold some or all of them to the government at some unspecified times.

The inapplicability of the *Duxbury* opinion is made vividly clear in a very recent case construing it against facts and legal theories that are similar to those Relator alleges in the present case. In *U.S. ex rel. Crennen v. Dell Mktg., L.P.,* No. 06-10546, 2010 WL 1713633 (D. Mass. Apr. 27, 2010), a relator alleged that various IT vendors had sold products to government agencies while misrepresenting and certifying falsely that the products complied with the TAA. The relator based his claim on, among other things, his personal examination of country-of-origin labels on government-owned equipment and his review of defendants' offerings on the government's *GSA Advantage!* website. *Id*. at *1-2. Defendants moved to dismiss the complaint on Rule 9(b) grounds because the relator had not alleged a specific false claim submitted by any defendant. Relator argued for a "more flexible" application of Rule 9(b).

Judge Saris rejected the *Crennen* relator's arguments and dismissed his claims. First, the court cited *Duxbury* but refused to relax Rule 9(b)'s requirements since – just as in the present case – there were no allegations that third parties, rather than the defendant, submitted false

11

claims. *Id*. at *4. The court then rejected relator's contention that pleading details of an allegedly fraudulent scheme in lieu of actual claims satisfies Rule 9(b). *Id*. at *4-6. Significantly, the court held that, although listing items for sale on a government website made it "plausible" that sales to the government occurred, plausibility did not satisfy Rule 9(b). *Id.* at *4 ("The standard is not plausibility, however, but particularity."). This comports fully with the Sixth Circuit's view that even when an alleged scheme is complex and far-reaching, a relator still must identify with particularity at least "specific examples of false claims submitted to the government." *Bledsoe II*, 501 F.3d at 510. Relator has not done that here.

        C.        **The FERA Amendments Did Not Legislatively Overrule *Bledsoe II***

Recognizing the thin Rule 9(b) ice on which he stands regarding his *qui tam* claims generally, Relator attempts to salvage any claims covering the past year by contending that *Bledsoe II* was legislatively overruled in May 2009 by the Fraud Enforcement and Recovery Act ("FERA"). *See* Opp. at 20-21. However, even if Relator were entitled to proceed regarding any claims for payment made outside of the period of his employment by S&N (December 2007 – September 2008) – and he is not[6] – Relator gains no traction with this argument because he mischaracterizes what he cites. Specifically, what Relator cites as a House committee report on FERA is actually a House committee report on a different proposed bill known as the False Claims Correction Act of 2009 (H.R. 1788), which has never even been voted on by the House. *See* http://www.govtrack.us/congress/bill.xpd?bill=h111-1788 (last visited June 24, 2010). FERA did not address Rule 9(b) pleading standards in FCA. FERA, Pub. L. No. 111-21, § 4,

---

[6] Even if the Court had jurisdiction over Relator's claims and he had pled them with requisite particularity, they would properly be limited to the time period in which he was employed by S&N. *See U.S. ex rel. Columbia v. Medical Ctr. E., Inc.*, 278 Fed. Appx. 973, 974 (11th Cir. 2008) (upholding district court's denial of discovery on claims that pre-dated relator's employment); *U.S. ex rel. Regan v. Medtronic, Inc.*, Nos. 95-1236, 96-1309, 2000 WL 1478476, at *3 (D. Kan. July 13, 2000) (limiting discovery to the time of relator's employment and the months immediately preceding and following).

123 Stat. 1617, 1622-25 (2009); *U.S. ex rel. Burroughs v. Central Ark. Dev. Council*, No. 4:08CV2757, 2010 WL 1875580, at *3 (E.D. Ark. May 10, 2010).

  **D.** **The FERA Amendments Did Not Remove From FCA Subsection 3729(a)(1)(B), Formerly 3729(a)(2), The Requirement To Plead And Prove The Existence Of False Claims**

 Relator makes a last-ditch effort to save at least some of his *qui tam* claims by contending that, as to those asserted in Count II – under the so-called "false record" provision in 31 U.S.C. § 3729(a)(1)(B), formerly subsection 3729(a)(2) – he need not allege or prove the existence of any actual of false claims insofar as that Count pertains to any claims for payment made after June 7, 2008. According to Relator, FERA removed such requirements retroactive to that date. Opp. at 27-28.[7]

 This is not correct. Even under the amended subsection 3729(a)(1)(B), a relator must allege and prove a false claim.[8] This is demonstrated by the very language of the amended subsection, which prohibits use of a false statement "material to a ***false or fraudulent claim***," 31 U.S.C. § 3729(a)(1)(B) (emphasis added); by FERA's legislative history, which makes clear that the "false record" provision was amended to address the intent element and not the claim requirement, S. Rep. No. 111-10, at 10-11 (2009); and by recent case law contrary to the argument Relator makes here, *see U.S. ex rel. Wilkins v. United Health Group, Inc.*, No. 08-

---

[7] Relator wisely does not even attempt a similar argument with respect to his claims under Count I, which are asserted under 31 U.S.C. § 3729(a)(1), now subsection 3729(a)(1)(A). Indeed, he concedes that a claim is required under both the prior and amended versions of the subsection. *See* Opp. at 18 n.15.

[8] Even if applicable to Relator's claims, the amended subsection 3729(a)(1)(B) would be effective as of the date of FERA's enactment in May 2009, not retroactive to June 7, 2008, since retroactive application would violate the Ex Post Facto Clause of the U.S. Constitution. *See U.S. ex rel. Sanders v. Allison Engine Co.*, 667 F. Supp. 2d 747, 753-58 (S.D. Ohio 2009). Thus, for the reasons discussed in note 4, *supra*, Relator would also not be able to avail himself of any FERA amendments in prosecuting his case since he left S&N's employment before FERA was enacted.

13

3425, 2010 WL 1931134, at *5 (D.N.J. May 13, 2010); *U.S. ex rel. Crennen v. Dell Mktg., L.P.*, No. 06-10546-PBS, 2010 WL 1713633, at *5-6 (D. Mass. Apr. 27, 2010).[9]

### III. Plaintiff-Relator's Retaliation Claim Must Be Dismissed Because He Failed to Allege All The Necessary Elements Under 31 U.S.C. § 3730(h)

Relator seeks to gloss over his insufficient Section 3730(h) retaliation claim by arguing that his allegations compare favorably to those at issue in *U.S. ex. rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439 (6th Cir. 2008). He is wrong. As S&N described in its opening brief, Relator by his own allegations was little more than a passive participant in meetings where his colleagues and managers purportedly discussed their knowledge of country-of-origin issues concerning S&N products. At most, he alleges he simply agreed with statements others purportedly made concerning possible regulatory issues. He clearly never gave any indication that he was engaged in any activity in furtherance of a possible FCA claim. *See* Open. Br. at 17-18 (quoting Comp. ¶¶ 59, 60, 62, 63, 65, 66, 68). Thus, none of Relator's allegations can be read as illustrative of protected conduct, which necessarily defeats any contention that S&N was aware of such conduct.

The facts of *Marlar* serve only to demonstrate the deficiency in Relator's Complaint. Specifically, the court there noted that Marlar's allegations that she "objected to her superiors"

---

[9] Relator labels Count III (Comp. ¶¶ 89-94) with a reference to the FCA's conspiracy subsection – 3729(a)(3), now 3729(a)(1)(C) – but in substance the Count is merely an amalgam of Relator's first two counts. Count III does not allege any conspiracy (or even any agreement of any sort) but, instead, simply alleges a violation of "section 3729" generally and claims S&N "defrauded the United States by making false and misleading statements as to its TAA compliance and/or making false claims based on those statements." *Id*. ¶ 91. Obviously, the substance of a claim, and not the label applied to it, controls. *E.g., Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001). Relator apparently agrees that he has not alleged a conspiracy count, since he nowhere points to his Count III to save his complaint from dismissal under Rule 9(b). Opp. at 18-28. In any event, because in substance it is a combination of Counts I and II, it should be dismissed for the same reasons that the first two Counts must be dismissed.

If, however, Relator actually intended to allege a cause of action under subsection 3729(a)(1)(C) / 3729(a)(3), his failure to allege a conspiracy or agreement renders that claim fatally deficient and subject to dismissal under Rule 12(b)(6). *See, e.g., U.S ex rel. Augustine v. Century Health Servs.* 136 F. Supp. 2d 876, 888 (M.D. Tenn. 2001) (applying subsection 3729(a)(3) and its requirement of alleging a conspiracy). The FERA amendments, even if applicable to any aspect of this action, did not eliminate this requirement. *See* 31 U.S.C. § 3729(a)(1)(C).

about inaccurate records and raised similar objections during an open employees' forum "likely do not suffice to show that BWXT was on notice of Ms. Marlar's protected activity." *Marlar*, 525 F.3d at 449. Instead, the court was swayed by relator's allegation that she wrote a letter to her employer's president and general manager that alleged the company had received large incentive payments from the government on account of false under-reporting of occupational injuries and illnesses – *i.e.,* that her employer had obtained government monies fraudulently. *Id.* at 449-50. As described above and in S&N's opening brief, Relator's allegations do not remotely resemble this type of conduct. Unlike the relator in *Marlar*, Relator never "confronted" his superiors about alleged fraud on the government, nor does he properly allege he informed them of any fraud he may have thought occurred. Accordingly, his claim for retaliation must be dismissed.

### IV.   Conclusion

For the foregoing reasons, and for those stated in S&N's opening brief, Relator's complaint should be dismissed with prejudice in its entirety.

June 25, 2010                                                                                 Respectfully submitted,

Of Counsel:                                                   Glen G. Reid, Jr. (Tenn. Bar # 08184)
                                                              Byron N. Brown, IV (Tenn. Bar # 023529)
Robert J. Conlan                                              WYATT, TARRANT & COMBS LLP
Admitted *Pro Hac Vice*                                       P.O. Box 775000
SIDLEY AUSTIN LLP                                             Memphis, Tennessee 38177
1501 K Street, N.W.                                           Tel.:  901-537-1000
Washington, D.C. 20005                                        Fax:  901-537-1010
Tel.:  202-736-8000                                           greid@wyattfirm.com
Fax:  202-736-8711                                            bbrown@wyattfirm.com
rconlan@sidley.com